<u>NOT FOR PUBLICATION</u>

| | |
|---|---|
| ZOFIA LAZARSKA, individually and as Administrator ad prosequendum for the Estate of Jacek Lazarski, the ESTATE OF JACEK LAZARSKI,<br><br>                      Plaintiffs,<br><br>v.<br><br>THE COUNTY OF UNION, THE COUNTY OF UNION JAIL, a department of the County of Union, HAROLD GIBSON, individually, and in his official capacity as the director of Public Safety for the County of Union, FRANK CROSE, individually, and in his official capacity as the Director of the Union County Jail, GRACE JAKA (or SAKA), L.P.N., individually, and in her official capacity as an employee, healthcare professional, supervisor or other agent of entity defendants, ERNESTINE CARTER, R.N., individually, and in her official capacity as an employee, healthcare professional, supervisor or other agent of entity defendants, PATRICIA M. WEST, R.N., individually, and in her official capacity as an employee, healthcare professional, supervisor or other agent of entity defendants, DR. RODEMAR PEREZ, individually, and in his official capacity as an employee, healthcare professional, supervisor or other agent of entity defendants, JOHN REDLING, individually, and in his official capacity as an Administrator of the entity defendants, CORRECTIONAL HEALTH SERVICES, INC., TRINITAS HOSPITAL (formerly known as St. Elizabeth Hospital), NURSEFINDERS, INC., XYZ ENTITIES and CORPORATIONS (1-10), individually, and in their official capacity, JOHN or JANE DOE, individually, and in their official capacity as | Civil Action No. 04-02602(WGB)<br><br><br>**O P I N I O N** |

1

Medical Director at the Union County Jail, DR.
JOHN and DR. JANE DOES, individually, and
in their official capacities as employees,
healthcare professionals, super-visors or other
agents hired by the Union County Jail, and
JOHN and JANE MOES, individually, and in
their official capacity as healthcare and jail care
employees, professionals, supervisors or other
agents of entity defendants, as shown in **Exhibit
A** annexed to the Complaint, which are illegible,

Defendants.

**APPEARANCES BY:**

NANCY S. MARTIN, Esq
MARTIN MELODY
3 Revmont Drive
Shrewsbury, N.J. 07702
 For Zofia Lazarska, Plaintiffs:

STEPHEN E. SIEGRIST, Esq
MURPHY & O'CONNOR, LLP
Commerce Center, Suite 130
1810 Chapel Ave. West
Cherry Hill, N.J. 08002-9292
 For Correctional Medical Services, Defendant
 For Ernestine Carter, Defendant
 For Patriacia M. West, Defendant

R. SCOTT EICHHORN, Esq.
MCDONOUGH, KORN, EICHHORN & BOYLE
Park Place Legal Center
959 South Springfield Ave.
P.O. Box 712
Springfield, N.J. 07061-0712
 For Rodemar Perez, Defendant:

**BASSLER, District Judge:**

2

Zophia Lazarski, individually, as mother of the decedent, and Zophia Lazarski as Administrator of the Estate of Jacek Lazarski ("Plaintiffs"), agreed to a Rule 68 Offer of Judgment and filed this motion against Correctional Health Services, Inc., Patricia West, R.N., and Ernestine Carter, R.N. (collectively, "CHS Defendants") for attorney's fees and costs pursuant to 42 U.S.C. § 1983, as well as a "multiplier" of 50 percent pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-4.1 *et seq.*[1]  For reasons set forth within this opinion, the Court grants Plaintiffs' motion for attorney's fees and costs in the amount of $50,532.41.

I.  **PROCEDURAL and FACTUAL HISTORY**

On June 3, 2004, Plaintiffs filed its first amended complaint under 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination ("NJLAD"), alleging the violation of several federal and state constitutional and statutory civil rights.  On August 17, 2005, Plaintiffs, CHS Defendants, and other defendants in the lawsuit participated in a settlement conference, during which Plaintiffs identified that they sought relief in the amount of $300,000.00.  A month later, CHS Defendants filed an Offer of Judgment pursuant to Rule 68

---

[1] The majority of issues presented in this case are resolved pursuant to 42 U.S.C. § 1983 and § 1988, and the case law surrounding these statutes; this judicial approach is justified by both parties' reliance upon federal cases as they relate to federal law.  The Court's treatment of NJLAD will be primarily reserved for the issue of contingency multipliers, the issue for which Plaintiffs' invoke the statute and its subsequent case law.

of the Federal Rules of Civil Procedure ("Rule 68 offer"), and

agreed to pay Plaintiffs $20,000.00.  The Rule 68 offer read:

> The defendants, Patricia M. West, R.N.,
> Ernestine Carter, R.N., and  Correctional Health
> Services, Inc., by way of an offer of judgment,
> pursuant to Federal Rule of Civil Procedure 68,
> offer to give judgment  against them for the sum
> certain amount of $20,000 jointly.
> This offer of judgment is being made within the
> time prescribed by  Federal Rule of Civil Procedure
> 68.  Plaintiffs should conduct themselves in
> accordance with the provisions set forth in Federal
> Rule of Civil Procedure 68.

On September 23, 2005, Plaintiffs accepted this Rule 68 offer.

That same day, Plaintiffs filed a motion against CHS

Defendants for attorney's fees and costs, as well as a

"multiplier" of 50 percent.

Although originally seeking attorney's fees and costs

totaling $78,379.09 ($64,895.50 in attorney's fees; $13,483.59

in costs) from CHS Defendants, Plaintiffs later settled with

other defendants named in the lawsuit for the total amount of

$23,333.32 in attorney's fees.[2]  Therefore, Plaintiffs

"amended" their motion for fees and costs by deducting the

amount of $23,333.32 from their original request, and are now

seeking to recover from CHS Defendants the amount of

---

[2] According to Plaintiffs' Letter dated October 28, 2005, Plaintiffs verbally agreed to settle for attorney's fees and costs with the  County of Union, Union County Jail, Harold Gibson, Frank Crose, and John Redling ("Union County Defendants") for the amount of $16,666.66 in fees, and with Trinitas Hospital for the amount of $6,666.66 in fees.  At oral argument, Plaintiff's counsel explained that this total amount of $23,333.32 was deducted from the amount of attorney's fees sought from CHS Defendants.

$55,045.77 ($41,562.18 in attorney's fees; $13,483.59 in costs), as well as a "multiplier" of 50 percent.

This motion's underlying case involves the death of Jacek Lazarski ("Lazarski") in the Union County Jail.  Lazarski suffered from a history of depression and suicidal thoughts, and was admitted to Trinitas Hospital due to depression, and health and drug related problems.  Around July 1, 2002, Lazarski returned to Union County Jail, where he was evaluated, placed under "ordinary watch," and was required to be checked every thirty minutes.  Early on July 2, 2002, Lazarski successfully committed suicide by hanging himself with a bed sheet.

Plaintiffs brought multiple claims against CHS Defendants and other parties, alleging collective negligence and recklessness in caring for, treating, and protecting Lazarski. CHS Defendants maintain that they have done nothing wrong and should not even be implicated in this matter.  Nevertheless, CHS Defendants filed a Rule 68 offer, and Plaintiffs now move for an award of attorney's fees and costs.[3]

## II.   DISCUSSION

### A.   AWARDING ATTORNEY'S FEES and COSTS

#### 1.   42 U.S.C. § 1988 and Rule 68 Offer of Judgment

---

[3] Other important facts, especially those held in opposition, will be presented and/or elaborated upon when relevant to the Court's decision-making and opinion.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes a prevailing party in federal civil rights litigation to claim attorney's fees and costs as part of its award.  Pursuant to 42 U.S.C. § 1988(b), in relevant part:  "In any action or proceeding to enforce a provision of . . . the Revised Statutes [*42 USCS §§ 1981-1983*, . . . ], . . . the court, in its *discretion*, may allow the *prevailing party* . . . a reasonable attorney's fee as part of the costs. . . " (emphasis added).

To qualify as a "prevailing party" for purposes of attorney's fees, the Third Circuit abides by the Supreme Court's "generous formulation" requiring that the party or parties "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  <u>Truesdell v. Philadelphia Housing Authority</u>, 290 F.3d 159, 163 (3d Cir. 2002) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  More specifically, to be a prevailing party within the meaning of § 1988, the party must obtain "a resolution of the dispute which changes the legal relationship between itself and the defendant."  <u>Id.</u> (citing <u>Texas State Teachers Ass'n v. Garland Independent School Dist.</u>, 489 U.S. 782, 792 (1989)).  In other words, the party "must obtain [either] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent

decree or settlement, [and] whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." <u>Id.</u> (citing <u>Farrar v. Hobby</u>, 506 U.S. 103, 112 (1992); <u>see also</u> <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.</u>, 532 U.S. 598 (2001). Furthermore, even if the decree does not expressly attest to the defendant's liability, "it nonetheless is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.'" <u>Truesdell</u>, 290 F.3d 159 at 164 (citing <u>Buckhannon</u>, 532 U.S. 598 (citation omitted)).

A Rule 68 Offer of Judgment ("Rule 68 offer")[4] is distinct from a private settlement and a consent decree. The Third Circuit's jurisprudence regarding Rule 68 offers is limited. Nevertheless, in a matter where one party is awarded judgment as a result of a Rule 68 offer, case law suggests that that party should be deemed "prevailing." <u>See</u> <u>Delta Air Lines, Inc. v. August</u>, 450 U.S. 346, 363 (1981) (Powell, J., concurring) ("A Rule 68 Offer of Judgment is a proposal of settlement that, by definition, stipulates that the plaintiff shall be treated as the prevailing party."). The United

---

[4] Rule 68 of the Federal Rules of Civil Procedure reads, in pertinent part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment.

States Supreme Court has held that "absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." Marek v. Chesny, 473 U.S. 1, 9 (1985). Thereafter, the Supreme Court identified claims under §§ 1983 and 1988 as allowing for the recovery of attorney's fees. Id.

   Plaintiffs have accused CHS Defendants of violating several federal civil rights protected under § 1983, and thereby invoke the applicability of § 1988. These claims were resolved by both parties through a Rule 68 offer. (See Plaintiff's Acceptance of the Offer of Judgment dated September 23, 2005). As previously noted, Rule 68 offers and their effects in rendering a party as "prevailing" for the purposes of attorney's fees and costs are not entirely self-evident, and few Third Circuit cases shed light on the present matter. Nevertheless, this Court finds no reason based upon precedent or counsels' arguments to question Plaintiffs' "prevailing party" status. CHS Defendants have not facially challenged the actual applicability of § 1988 and its provisions regarding attorney's fees and costs, nor do they contest whether Plaintiffs are the prevailing party as a result of the Rule 68 offer. Instead, CHS Defendants

8

generally question whether the imposition of attorney's fees and costs are warranted or serve any purpose in this matter.

## 2. Express Waiver of Attorney's Fees and Costs

When a parties' agreement is silent as to whether the prevailing party may receive attorney's fees and costs or whether the prevailing party has waived that possibility, the Third Circuit favors a presumption on behalf of the prevailing party's entitlement to fees and costs, especially in the context of civil rights litigation. <u>See El Club Del Barrio v. United Cmty. Corp.</u>, 735 F.2d 98, 100 (3d Cir. 1984) ("a prevailing party should ordinarily recover an attorney's fee unless special circumstances render an award unjust") (citations omitted); <u>see also Torres v. Metropolitan Life Ins. Co.</u>, 189 F.3d 331, 334 (3d Cir. 1999) (reaffirming <u>El Club Del Barrio's</u> acknowledgment of the Supreme Court's determination that prevailing civil rights plaintiffs are presumptively entitled to recover attorney's fees).

Beginning with <u>El Club Del Barrio</u>, the Third Circuit has repeatedly held that only an express and clear waiver will preclude the plaintiffs' possibility of recovering statutorily authorized attorney's fees and costs, and therefore, the Circuit Court rejected the "silence equals waiver" rule and the relevancy of "extrinsic evidence such as the course of negotiations." 735 F.2d 98 at 100; <u>see also Torres</u>, 189 F.3d

331 at 333 ("If the parties to a settlement agreement wish to extinguish the prevailing party's claim for attorney's fees, they must do so specifically and expressly in the terms of the agreement."). Accordingly, anything less than a precise, unequivocal statement from the opposing party refusing to pay any attorney's fees and costs will not suffice to waive a statutory right to such fees and costs. "Therefore, where a defendant seeks to settle its total liability on a claim, it shall be incumbent upon the defendant to secure an express waiver of attorney's fees. Silence will not suffice." Ashley v. Atl. Richfield Co., 794 F.2d 128, 138-139 (3d Cir. 1986).

CHS Defendants argue that the circumstances surrounding its Rule 68 offer and its negotiations illustrate their prior refusal to pay any attorney's fees and costs, and should therefore preclude Plaintiffs' current claims. (See Def. Br. at 7-8). They point to Hennessey v. Daniels Law Office, for the proposition that parole evidence should be considered when interpreting ambiguous, contractual terms like "judgment" in a Rule 68 offer. 270 F.3d 551 (8th Cir. 2001). However, CHS Defendants never claim that Plaintiffs expressly waived their right to attorney's fees and costs in a manner comporting with the requirements of the Third Circuit's jurisprudence found in El Club Del Barrio, Ashley, and Torres. In Torres, the

plaintiff, as part of a settlement agreement, signed a release
stating:

> Without limitation, Plaintiff specifically releases
> all claims, charges, or demands asserted or
> assertable in the Pending Lawsuit, . . . arising
> from or relating to Plaintiff's relationship of
> any kind with the Released Parties, including
> without limitation any rights or claims Plaintiff
> may have under Title VII of the Civil Rights Act of
> 1964 . . . and the Civil Rights Act of 1991.

189 F.3d 331 at 333. The Third Circuit held that this
disclaimer did not release defendants from liability for
attorney's fees and costs because it did not specifically
address and waive the possibility of awarding such fees and
costs. Id. Here, CHS Defendants readily admit that they did
not include an adequate waiver by Plaintiffs in their Rule 68
offer. (See Def. Exh. A at ¶ 9). Similarly, CHS Defendants'
extrinsic evidence does not evince a waiver sufficient to
overcome the strong presumption of a fee award that is
available for a successful federal civil rights litigant.

For the foregoing reasons, Plaintiffs are entitled to an
award of attorney's fees and costs.

**B.   AMOUNT OF ATTORNEY'S FEES AND COSTS**

**1. Reasonableness of Plaintiffs' Attorney's Fees and Costs**

CHS Defendants also contend that Plaintiffs' attorney's
fees and costs should be reduced. In Rode v. Dellarciprete,
the Third Circuit ruled that a district court cannot "decrease

a fee award based on factors not raised at all by the adverse party." 892 F.2d 1177, 1183 (3d Cir. 1990). Moreover, "[o]nce the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id. Also important to note, "attorney hours fairly devoted to one defendant that also support claims against other defendants are compensable." Id. at 1185 (citations and quotations omitted).

To determine the reasonableness of a party's attorney's fees and costs, the inquiry begins by using the "lodestar" formula, which multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citing Hensley, 461 U.S. at 424, 433). "When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. (citing Pennsylvania v. Del. Valley Citizen's Council for Clean Air, 478 U.S. 546, 564 (1983)).

First, when calculating the reasonableness of the hours expended on a case, the court must examine the hours charged to see if they are reasonably expended in light of the purposes and activities described, and to see if any time is

"excessive, redundant, or otherwise unnecessary time" and subject to exclusion. Id. (citing Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)). While not questioning any of the attorneys' hours spent on the case, CHS Defendants specifically draw the Court's attention to several costs accrued by Plaintiffs. (See Martin Melody Pre-Bill Worksheet dated September 22, 2005 ("Pl. Exh. X") appended to Certification of Nancy S. Martin dated September 22, 2005 ("Martin Cert.")). To begin, CHS Defendants criticize Plaintiffs' photocopying charges at 25 cents per page as being excessive. (See Def. Br. at 16). Second, CHS Defendants argue that Plaintiffs' entries for "Service of Mercer County," costing $29.00 on June 30, 2004, and for copying documents from Ocean County, costing $100.00 on April 23, 2005, are both irrelevant to this case and must be in error. (See Def. Br. at 16). Finally, CHS Defendants point to the May 24, 2005 roundtrip travel of Plaintiffs' expert James Lawrence ("Lawrence"), at a cost of $409.64, as also being excessive. (See Def. Br. at 16).

Regarding photocopying expenses, the District Court for the District of New Jersey has stated that a "$ .25 per page charge is excessive, because there are numerous commercial services which will copy for far less. Not every copying job is large enough to be sent to a professional service, but an

13

average weighted charge of $ .12 per page is reasonable."
Hurley v. Atl. City Police Dep't., No. 93-260, No. 94-1122,
1996 U.S. Dist. LEXIS 14088 at *12 (D.N.J. Sept. 17, 1996).
Contrarily, the District Court for the Eastern District of
Pennsylvania has on at least one occasion deemed 25 cents per
page for photocopying charges as being "very reasonable."
Churchill v. Star Enter., No. 97-3527, 1998 U.S. Dist. LEXIS
6068 at *29-30 (E.D. Pa. Apr. 17, 1998). Because Defendants
do not provide any persuasive evidence as to why Plaintiffs'
photocopying charges should be reduced to 10 cents per page,
the Court will not reduce the charges as requested. Likewise,
the Court is aware that some photocopies, based on color,
size, etc., are more expensive than others. The Court,
however, will reduce Plaintiffs' photocopying charges from 25
cents to 20 cents per page to conform to the majority of cases
and precedents. See Interfaith Cmty. Org. v. Honeywell
Int'l., Inc., No. 95-2097, 2005 U.S. Dist. LEXIS 34381 at *26
(D.N.J. June 15, 2005) ("This Court has previously held that
the rate of 20 cents per page is reasonable."). Therefore,
Plaintiffs are entitled to $912.60 (4,563 photocopies
multiplied by 0.20 cents) for their photocopying expenses, a
reduction of $228.15.

Next, the Court agrees with Defendants that Plaintiffs'
"Service of Mercer County" and its copying of documents from

Ocean County appear irrelevant and unnecessary, since Mercer
County was never a party to this litigation, and no indication
is given as to the reason for obtaining documents from Ocean
County. Plaintiffs' descriptions of these activities do not
help to specify their purposes, and thus, their collective
costs of $129.00 are excluded from the award of costs. (See
Martin Cert., Pl. Exh. X at 28, 34). On the other hand, the
Court upholds Plaintiffs' $409.64 charge for the roundtrip
travel of Lawrence, because this amount seems to mirror
Lawrence's hourly fee, as evidenced by the entry for "Balance
of Expert Jim Lawrence" which also cost $409.64. (See Martin
Cert., Pl. Exh. X. at 36). It is not unreasonable that
Lawrence charged Plaintiffs for his travel time, even if it
was only a half-hour from New York to New Jersey and back.
Therefore, Defendants remain liable for that $409.64.
Furthermore, the Court has examined the rest of Plaintiffs'
billing records, and has determined that all other hours
charged appear reasonable.

Second, when calculating the reasonableness of an
attorney's hourly rate, the court looks to "the prevailing
market rates in the relevant community," and "should assess
the experience and skill of the prevailing party's attorneys
and compare their rates to the rates prevailing in the
community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." <u>See</u> <u>Blum v.</u>
<u>Stenson</u>, 465 U.S. 886, 895 (1984); <u>Dellarciprete</u>, 892 F.2d at
1183.  The prevailing party "bears the burden of establishing
by way of satisfactory evidence, 'in addition to [the]
attorney's own affidavits,' . . . that the requested hourly
rates meet this standard." <u>Maldonado</u>, 256 F.3d at 184; <u>see</u>
<u>also</u> <u>Washington v. Phila. City Ct. of Common Pleas</u>, 89 F.3d
1031, 1035 (3d Cir. 1996).  Also relevant is the prevailing
party's usual hourly rates.  <u>Id.</u> (citing <u>Pub. Interest Group</u>,
51 F.3d at 1185).  Here, CHS Defendants only challenge the
hourly rates of Nancy S. Martin, Esq.; they do not question
the rates for Ms. Martin's colleagues, Linda B. Kenney, Esq.,
or Eugene J. Melody, Esq.  Specifically, CHS Defendants
contend that Ms. Martin's relative inexperience in relation to
her co-counsel should set her hourly rate closer to $150.00 or
$187.50 per hour.  Because of this argument, the Court will
only scrutinize the adequacy of Ms. Martin's hourly rates,
which were $250.00 per hour before an increase on June 21,
2004 to $300.00 per hour.  (<u>See</u> Martin Cert., Pl. Exh. X).

In support of Ms. Martin's hourly rates, Plaintiffs
explain that Ms. Martin became a partner at her law firm in
1998, and, since September 2004, has been an equal partner
with Mr. Melody at the law firm of Martin Melody, L.L.C.,
during all of which she has been instrumental in litigating

numerous civil rights cases. (<u>See</u> Martin Cert. at ¶ 3; <u>see</u> <u>also</u> Melody Cert. at ¶¶ 10-19). Moreover, Plaintiffs point to an April 14, 2004 New Jersey Superior Court order awarding attorney's fees and expenses to Plaintiffs' counsel, in which Ms. Martin's hourly rate of $300.00 was accepted and compensated by Judge Ross. R. Anzaldi, J.S.C. (<u>See</u> Melody Cert. at ¶ 16; <u>see also</u> Order for Award of Attorneys' Fees and Expenses dated April 14, 2004 appended to Martin Cert. ("Pl. Exh. D")). Plaintiffs also provide other New Jersey cases in which counsel was awarded hourly rates comparable to $250.00 and $300.00. (<u>See</u> <u>Sampson v. City of Jersey City</u>, Civil Action No. 89-4608 dated February 19, 1993 appended to Martin Cert. ("Pl. Exh. N") (awarding hourly rate of $275.00 for experienced attorney).

Additionally, Plaintiffs proffer several affidavits from New Jersey attorneys that testify to the reasonableness of an approximate $300.00 per hour rate for civil rights and other litigation. (<u>See</u> Certification of Michelle J. Douglass, Esq. dated July 17, 2002 appended to Martin Cert. ("Pl. Exh. G") ($250.00 per hour is reasonable for a partner's time, although $350.00 per hour is also reasonable depending upon experience); <u>see also</u> Certification of Frederic J. Gross, Esq. dated July 12, 2002 appended to Martin Cert. ("Pl. Exh. H") at ¶¶ 21-28 (around 1997, "most fee applications from experienced

New Jersey civil rights attorneys [were] in the hourly range of $250.00 to $350.00 an hour . . . those with about ten years experience at the low end;" though, this is a "now-outdated range")). Though many of these exhibits are several years old and do not reference Ms. Martin, they do assist in establishing a reasonable "market rate" by which to compare Ms. Martin, who has over 10 years of experience as a lawyer and is a partner at her law firm.

In light of Plaintiffs' justifications for Ms. Martin's hourly rates, the Court finds that Plaintiffs' counsel has met its burden and that Ms. Martin is entitled to an hourly rate of $250.00 and $300.00 per hour.[5] (See Martin Cert., Pl. Exh. X). Therefore, Plaintiffs have $64,895.50 in attorney's fees and $13,126.44 in costs, for a total of $78,021.94. After subtracting Plaintiffs' other fee settlements valued at $23,333.32, the total amount Plaintiffs may receive is $54,688.62 ($41,562.18 in attorney's fees and $13,126.44 in costs).

## 2. Mitigating Attorney's Fees and Costs

After computing the lodestar, a court considering an award of attorney's fees under § 1988 may adjust the fee amount upward or downward depending upon the plaintiff's success in the case. Hensley, 461 U.S. at 436. In Hensley,

---

[5] According to Pl. Exh. X, Ms. Martin accrued 12.8 chargeable hours at $250.00 per hour, and 40.8 chargeable hours at $300.00, for a total amount of $15,440.00.

the Supreme Court held that "[i]f . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive number." _Id._ Though no definitive or binding methods exist for making these determinations, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." _Id._ at 436-437.  Despite its prescribed discretion, when adjusting the lodestar a Third Circuit district court cannot rely upon a rigid mathematical approach or a proportionality analysis between the amount of damages awarded and the amount of attorney's fees sought.  _See, e.g._, _Pub. Interest Research Group_, 51 F.3d 1179 at 1189-90; _Washington_, 89 F.3d 1031 at 1042.  Nevertheless, in the court's discretionary calculation of lodestar adjustments, the most crucial variable is the "results obtained" by the plaintiff. _Hensley_, 461 U.S. at 437 ("When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained."); _see also_ _Pub. Interest Research Group_, 51 F.3d at 1186 n. 8.

When adjusting fee awards on account of a plaintiff's limited success, courts have adopted several different approaches. See, e.g., Washington, 89 F.3d at 1043 (holding that a 50 percent reduction of attorney's fees was appropriate when plaintiff requested $750,000.00 in damages and was awarded $25,000.00 by a jury); Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 551 (E.D. Pa. 2003) (reducing fees by 75 percent when plaintiff sought $300,000.00 in damages but was awarded the nominal amount of $1,000.00); Posa v. City of East Orange, No. 03-233, 2005 U.S. Dist. LEXIS 20060 (D.N.J. Sept. 8, 2005) (reducing fee request of $115,000.00 to $40,000.00 when plaintiffs were awarded $3,066.00 for a multi-million dollar claim). In support of the proposition that monetary success should be considered when awarding and mitigating Plaintiffs' attorney's fees, Defendants cite to additional cases that reduced the lodestar amount due to limited successes. See, e.g., Owens v. Ryder Servs. Corp., 918 F. Supp. 366 (N.D. Al. 1996) (reducing attorney's fees by about 50 percent after defendants forgot to include a fee waiver in Rule 68 Offer of Judgment); Davis v. Southeastern Pa. Transp. Auth., 735 F. Supp. 158 (E.D. Pa. 1990), aff'd by 924 F.2d 51 (3d Cir. 1991) (reducing fees by about 65 percent when plaintiff sought $600,000.00 but was awarded $10,000.00).

As noted by CHS Defendants, Plaintiffs originally sought relief for $300,000.00 from all defendants originally named in this lawsuit.  CHS Defendants settled with Plaintiffs for $20,000.00, as specified in their Rule 68 offer.  In addition, Union County Defendants settled with Plaintiffs for $50,000.00, with $16,666.66 of that amount reserved for fees. Likewise, Trinitas Hospital settled with Plaintiffs for $20,000.00, with $6,666.66 of that amount reserved for fees. In total, Plaintiffs recovered $23,333.32 in attorney's fees from other defendants, and then reduced their requested fees and costs against CHS Defendants from $78,379.09 to $55,045.77.  In particular, Plaintiffs subtracted the $23,333.32 from their $64,895.50 claim against CHS Defendants for attorney's fees.  The Court has further reduced the possible, total award to $54,688.62 ($41,562.18 in attorney's fees and $13,126.44 in costs).  Upon considering these facts, the Court finds that Plaintiffs achieved only limited success against CHS Defendants, and should have their award of attorney's fees reduced accordingly.

It is unclear as to the particular amount Plaintiffs expected to gain from CHS Defendants if Plaintiffs had litigated this case to a judgment.  Still, CHS Defendants' Rule 68 offer of $20,000.00 puts Plaintiffs far from achieving the complete and absolute success of $300,000.00.

Furthermore, the Court finds that Plaintiffs' request for attorney's fees is excessive since Plaintiffs, as mentioned above, settled against Union County Defendants for a fee award of $16,666.66 and Trinitas Hospital for $6,666.66, but still seek almost twice that total amount against CHS Defendants. CHS Defendants allege that Plaintiffs seek these fees simply due to a "technicality," because CHS Defendants' counsel did not include a waiver within the Rule 68 offer and are thus an easy target for Plaintiffs' reimbursement. (See Def. Br. at 7). While not vindicating such speculation, the Court is sensitive to the relative position of CHS Defendants in relation to the other defendants who have settled for fees and costs at a significantly reduced value than that asked of CHS Defendants. The Court is also aware that Plaintiffs continue to litigate this matter against Dr. Perez, who has refused to settle with Plaintiffs.

At the same time, the Court recognizes that the purpose of § 1988, and its awarding of attorney's fees and costs in federal civil rights litigation to prevailing parties, is to encourage competent lawyers to assist victims of civil rights violations. Conversely, fee awards may also act as a deterrent to those who threaten invasion against the rights and well-being of others. The Court finds that Plaintiffs are entitled to a fee award for all of the equitable reasons

stated above.  The Court, however, shall reduce Plaintiffs'
award of $41,562.18 for attorney's fees by 25 percent, based
on Plaintiffs' limited success and other equitable
considerations.  Therefore, Plaintiffs' fee award is reduced
to $31,171.64.  When combined with an award of costs for
$13,126.44, Plaintiff's entire award for attorney's fees and
costs equates to $44,298.08.  The Court believes this amount
to be "reasonable in relation to the results obtained."
Hensley, 461 U.S. at 440.

### 3.  "Multiplier"

Because Plaintiffs alleged a violation of NJLAD and §
1983 and are the prevailing party, Plaintiffs claim that they
are entitled to a contingency multiplier ("multiplier") that
should increase their award of attorney's fees by 50 percent.
In City of Burlington v. Dague, the Supreme Court held that
"enhancement for contingency is not permitted under the fee-
shifting statutes at issue," but this judicial proscription
has impliedly extended to all other federal fee-shifting
statutes, including § 1983, as well.  505 U.S. 557, 565-567
(1992).  However, the New Jersey Supreme Court has held that
multipliers are permissible, and should serve to enhance an
attorney's fee award when that attorney accepted a case on a
substantially contingent basis with a serious risk of
suffering nonpayment unless he or she prevailed.  Rendine v.

23

_Lorestani_, 141 N.J. 292, 337 (1995); _see also_ _Blakey v._
_Cont'l. Airlines_, Inc., 2 F. Supp. 2d 598, 607-608 (D.N.J.
1998) (accepting and applying _Rendine's_ multiplier approach).
Factors for determining a multiplier are "whether a case was
taken on a contingent basis, whether the attorney was able to
mitigate the risk of nonpayment in any way, and whether other
economic risks were aggravated by the contingency of payment."
_Rendine_, 141 N.J. at 339.   The likelihood of the plaintiff's
success is also a consideration.   _Id._ at 340-341.   Moreover,
the New Jersey Supreme Court has declared that an ordinary
range for multiplying a fee award is between 5 and 50 percent
of the lodestar fee, with the typical enhancement falling
between 20 and 35 percent.   _Id._ at 343.

     Most persuasive in the present case is that Plaintiffs
accepted this case on a straight contingency basis and risked
the possibility of not recovering any award in this civil
rights litigation.   (_See_ Plain. Br. at 17; _see also_
"Plaintiffs' Retainer Agreement" dated August 5, 2002 appended
to Martin Cert. ("Pl. Exh. E") ("We have agreed to represent
you on a contingency fee basis.")).   Additionally, Plaintiffs
emphasize that cases like this are unpredictable, prolonged,
and require counsel to represent clients who have minimal
financial resources, which only enhances the possibility that
counsel's efforts may go uncompensated.   (_See_ Martin Cert. at

¶¶ 7-10). Because the Court agrees in part with this reasoning, Plaintiffs are entitled to a multiplier.

However, the Court also believes that a more moderate multiplier is appropriate, as opposed to Plaintiffs' request for a 50 percent multiplier. With relatively straightforward facts surrounding Larzaski's death and by bringing suit against a large number of potentially liable defendants, Plaintiffs had a reasonable likelihood for achieving some success in this case, as proven by the recent onrush of settlement negotiations. That these settlements follow an extensive period of initial findings and discovery is not unreasonable, and thus, this litigation's duration should not appear unusually lengthy or particularly worrisome to Plaintiffs and their counsel. Therefore, the Court does not find that this case constitutes an extraordinarily difficult or risky case warranting an above-average multiplier. Rendine, 141 N.J. at 339-41.

For the reasons stated above, the Court will enhance the Plaintiffs' attorney's fee award of $31,171.64, notwithstanding the $13,126.44 for costs, by a contingent multiplier of 20 percent, a percentage well within the New Jersey Supreme Court's suggested ordinary range. See id. Therefore, Plaintiffs' award of attorney's fees is now

enhanced to $37,405.97.  When combined with the $13,126.44 in costs awarded, Plaintiffs total amount awarded is $50,532.41.

III.  **CONCLUSION**

As previously explained, the Court pursuant to § 1988 will award attorney's fees and costs in favor of Plaintiffs. Subtracted from the costs is $357.15 for unnecessary or excessive costs, thereby resulting in an award of costs for $13,126.44.  The attorney's fee award is subject to a 25 percent reduction at the discretion of the Court, resulting in $31,171.64 in attorney's fees.  However, pursuant to the contingency multiplier approach adopted by the New Jersey Supreme Court and as it relates to NJLAD, the Court will increase the fee award of $31,171.64 by 20 percent, so as to result in a fee award for Plaintiffs of $37,405.97.  By combining the attorney's fees with costs, Plaintiffs are entitled to a final, total award of $50,532.41.

For all of the foregoing reasons, the District Court for the District of New Jersey awards attorney's fees and costs to Plaintiffs for the amount of $50,532,41.  As requested by CHS Defendants, the Court assesses this order for attorney's fees and costs against CHS only, since both Patricia West, R.N., and Ernestine Carter, R.N., were employees of CHS at the time

of this case's relevant events.[6]   Plaintiffs have not forwarded any objections to this request by CHS Defendants.


An appropriate Judgment accompanies this Opinion.


              /s/ William G. Bassler
         WILLIAM G. BASSLER, U.S.S.D.J.


Dated: August 4, 2006

---

[6] In their opposing brief, CHS Defendants request that, "should the Court decide to award any attorney's fees and costs against the CHS defendants it is respectfully requested that the award be against the defendant CHS only as the employer of the two nurses."  (See Def. Br. at 17).  Plaintiffs have not forwarded any objections to this request.